UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| EWC FRANCHISOR LLC<br>            Plaintiff,<br><br>     v.<br><br>THE WAXXPOT GROUP, LLC;<br>            Defendant. | Cause No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff EWC Franchisor LLC ("EWC" or "Plaintiff"), by and through its undersigned counsel, complains and alleges against defendant The Waxxpot Group, LLC ( "Defendant" or "Waxxpot"), as follows:

## NATURE OF THE ACTION

1.      EWC, known in the industry and to consumers as European Wax Center, is the largest and fastest growing franchisor and operator of out-of-home waxing and hair removal services, and related products, in the United States. EWC operates over 1,000 waxing salons across the country and sells body care products through its primary domain at https://waxcenter.com ("the Waxcenter.com Domain"). Plaintiff owns common law and registered trademark rights, including in the United States and abroad, in the trademark WAX PASS for use in connection with beauty salon services. As a result, consumers have come to associate the WAX PASS mark and the Waxcenter.com Domain,  exclusively with EWC.

2.      The Defendant, Waxxpot, is a direct competitor of Plaintiff in the out-of-home waxing services industry. Defendant is using a trademark that is confusingly similar to Plaintiff's federally registered WAX PASS trademark, namely, WAXX PAXX (the "WAXX PAXX Mark") for competing

waxing salon services. Defendant is further using the confusingly similar domain www.waxxcenter.com (the "Waxxcenter.com Domain") to re-route EWC's consumers to the Defendant's primary domain at https://waxxpot.com (the "Waxxpot.com Domain"). Defendant has undertaken this conduct in bad faith, and without EWC's authorization or consent, with the deliberate intent to mislead consumers and illegally trade off the extensive goodwill associated with the EWC brand, and EWC's domain and well-known WAX PASS trademark.

3.      Consequently, EWC seeks injunctive relief and monetary relief, disgorgement of profits, attorneys' fees, and costs from Defendant under §§ 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), injury to business reputation and trademark dilution under Texas Business and Commerce Code § 16.103, tortious interference with prospective business relations under Texas state law, unjust enrichment, and unfair competition and trademark infringement under common law.

## **PARTIES**

4.      Plaintiff EWC Franchisor is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business at 5830 Granite Parkway, Suite 300, Granite Park V, Plano, Texas 75024. EWC is directly engaged, *inter alia,* with the promotion, distribution, and sale in interstate commerce, including within this judicial district, of hair removal services, hair tinting services, and assorted body care products.

5.      Upon information and belief, and based upon a public records search, Defendant The Waxxpot Group ("Waxxpot Group") is a limited liability company duly organized and existing under the laws of the State of Ohio, with its principal place of business at 155 W. Main St., Suite 1702, Columbus, Ohio 43215. Waxxpot Group can be served via its Registered Agent for Service, Robert Wharton at 629 N High Street, 4th Floor, Columbus, Ohio 43215, or wherever he may be found.

Waxxpot Group has offered for sale, and sold, waxing services in commerce, including within the State of Texas and this judicial district, including under the Infringing Mark.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over EWC's federal trademark infringement and unfair competition claims pursuant to 15 US.C. § 1121 and 28 U.S.C. § 1331 and 1338.

7.     This Court has subject matter jurisdiction over EWC's claims that arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a), because such claims are related to and arise from the same set of facts as EWC's federal claims.

8.     This Court has general and specific personal jurisdiction over Waxxpot because it regularly conducts business within this judicial district, and a substantial part of the complained-of acts occurred in this judicial district.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Waxxpot is subject to general and personal jurisdiction within this judicial district, and because a substantial part of the events giving rise to EWC's claims occurred within this judicial district. Waxxpot operates three salons within this judicial district and has offered for sale, and sold, waxing services in commerce within this judicial district, including under the Infringing Mark.

## FACTUAL BACKGROUND

### A.  Plaintiff's Trademarks, Goodwill and Recognition with Consumers

10.     Founded in 2004, EWC is the largest and fastest growing franchisor and operator of out-of-home waxing and hair removal services in the United States. Over the past two decades, it has expanded from out-of-home waxing services to include the sale of a wide array of body care products including, *e.g.*, body scrubs, exfoliating gel, and body wash.

11.     To protect and maintain the image of the brand, and its franchisees, EWC's services and products are offered by the Plaintiff by way of its franchisee-operated salons, and through the EWC website at https://waxcenter.com (the "Waxcenter.com Domain"). EWC further sells single center waxing passes to its franchisee-operated salons, under the service mark WAX PASS ("WAX PASS Mark" or "Plaintiff's Mark"), through the Waxcenter.com Domain.

12.     Plaintiff, by way of its franchisees, operates more than 1,000 waxing salons throughout the United States, with at least 112 of those locations spread throughout the State of Texas. Further, Plaintiff's principal place of business is located at 5830 Granite Parkway, Suite 300, Granite Park V, Plano, Texas 75024.

13.     EWC owns common law and registered trademark/service mark rights for a multitude of trademarks and service marks including, but not limited to, the service WAX PASS Mark for use in connection with beauty salon services featuring hair removal.

14.     EWC is the sole owner of the WAX PASS Mark, which is registered with the United States Patent and Trademark Office ("USPTO") in connection with the services listed below, which is detailed in the table below. A true and correct copy of the foregoing registration is attached hereto as **Exhibit A:**

| Mark | Reg. No. | Reg. Date | Class & Services |
|------|----------|-----------|------------------|
| WAX PASS | 3281599 | August 21, 2007 (incontestable) | Beauty salon services featuring hair removal in Class 44 |

15.     The WAX PASS Mark is valid and subsisting and is in full force and effect. EWC's rights in the WAX PASS Mark have become incontestable pursuant to 15 U.S.C. § 1065. Because of its incontestable status, this registration provides – among other benefits – conclusive evidence as to the validity of the WAX PASS Mark and EWC's exclusive rights to use the mark in connection with the identified services. 15 U.S.C. § 1115(b).

16.     Plaintiff has continuously used the WAX PASS mark since at least 2004 in connection with Plaintiff's services.

17.     Plaintiff has continuously used the Waxcenter.com Domain since at least 2004 in connection with EWC's services.

18.     EWC has expended considerable time, many millions of dollars, and significant effort over the past twenty years to strategically market and promote both its WAX PASS Mark and its services offered under that Mark.

19.     As a result of Plaintiff's substantially exclusive and continuous use of its various trademarks and service marks, including the WAX PASS Mark, in connection with Plaintiff's services over the past two decades, and Plaintiff's extensive promotion of the WAX PASS Mark in connection with Plaintiff's services, EWC has developed substantial goodwill, recognition, and a reputation for high quality waxing services. It has also resulted in extensive sales of these services, and related body care products.

20.     Further, Plaintiff's extensive number of locations in the State of Texas, high number of sales for waxing services within these locations, and extensive marketing in Texas have resulted in Plaintiff's WAX PASS Mark becoming distinctive in the minds of the purchasing public in Texas. Consumers view the WAX PASS Mark as a distinctive mark for out-of-home waxing services, offered under a single exclusive source – EWC.

21.     Plaintiff's Mark has consistently been used in Texas since at least 2009 in connection with Plaintiff's services — long before Defendant commenced its unlawful activities described in this Complaint.

22.     Due to Plaintiff's continuous and longstanding use of the Waxcenter.com Domain, and the wide renown associated with Plaintiff's brand – both in the United States generally and in the

State of Texas – consumers who type the Waxcenter.com Domain into a web browser understand, and intend, for the domain to bring them to EWC's website for out-of-home waxing services.

**B.  Defendants' Activities**

23.    Waxxpot, either directly or through its franchised salons, is an out-of-home waxing service provider. It offers waxing services through Defendants' franchised and operated salons, and its services are booked through its primary website at https://waxxpot.com (the "Waxxpot.com Domain"). It further offers body care products at its franchisee-operated salons.

24.    Defendants is a direct competitor of EWC in the out-of-home waxing provider industry.

25.    Upon information and belief, since Waxxpot launched in 2014, it has expanded to operate eleven salons nationwide, including four in the state of Texas.

*Defendant's Intentional Infringement of Plaintiff's WAX PASS Mark*

26.    Upon information and belief, in approximately May, 2023, Defendant adopted and began using the WAXX PAXX service mark ("WAXX PAXX Mark" or "Defendant's Mark") for out-of-home waxing services.

27.    Defendant prominently uses the WAXX PAXX Mark in connection with the advertising, promotion and/or offering for sale of its waxing services.

28.    The waxing services offered by Defendant under the WAXX PAXX Mark are identical to those offered by Plaintiff under its WAX PASS Mark.

29.    The WAXX PAXX Mark is substantially and confusingly similar to Plaintiff's registered and incontestable WAX PASS Mark. Upon information and belief, the replacement of "SS" with "XX," which is phonetically identical, and the duplication of the "X" are attempts to play on Defendant's WAXXPOT house mark while utilizing Plaintiff's goodwill and trademark rights.

30.     Defendant's purposeful misappropriation of Plaintiff's intellectual property falsely suggests, and is likely to cause the mistaken impression that EWC is the source of the WAXX PAXX waxing services, that the Defendant is controlled or owned by EWC, that EWC authorizes the waxing services, or is otherwise affiliated with or connected to Defendant, when it is not.

31.     There is nothing coincidental about the Defendant's actions. Upon information and belief, the Defendant's use of the WAXX PAXX Mark and the Waxxcenter.com Domain demonstrates a clear and undeniable pattern of intentional copying and attempts to unjustly erode Plaintiff's goodwill by illegally imitating Plaintiff and suggesting a connection between EWC and the Defendant when there is none.

**Defendant's Unlawful Re-Routing of Waxxcenter.com Domain**

32.     Instead of innovating and competing fairly against Plaintiff's, in approximately April, 2024, Defendant chose to take illegal shortcuts by purchasing the domain www.waxxcenter.com (the "Waxxcenter.com Domain") that Defendant re-routes to Defendant's Waxxspot.com Domain.

33.     Upon information and belief, at all times relevant to this Complaint, the Waxxcenter.com Domain was owned, operated, and controlled by the Defendant.

34.     Upon information and belief, Defendant does not own, or use, any trademarks or service marks containing the phrases "wax center" or "waxx center."

35.     Upon information and belief, Defendant's purposeful use of the Waxxcenter.com Domain is an intentional attempt to capitalize on a common typo made by consumers attempting to visit Plaintiff's Waxcenter.com Domain – the accidental addition of a single 'x' letter.

36.     The scope of the Defendant's unfair and unlawful behavior cannot be understated. Upon information and belief, the only valid commercial reasons for Defendant to have purchased, and re-directed the Waxxcenter.com Domain to Defendant's Waxxpot.com Domain is a purposeful

effort to capitalize on Plaintiff's goodwill, an intentional interference with EWC's potential or returning consumers, or an attempt to suggest an affiliation with the Plaintiff when there is none.

37.     As a result, consumers are likely to be misled into believing that Defendants' waxing services and branded skin care products are approved of, sponsored by, or affiliated with Plaintiff, when they are not.

**Defendant Ignored EWC's Objections to Defendant's Unlawful Conduct**

38.     In or around July 2024, EWC discovered that Defendant wase engaging in unfair competition by, *inter alia*, re-routing the Waxxcenter.com Domain to Defendants' primary Waxxpot.com Domain.

39.     Upon learning about Defendant's redirection of the Waxxcenter.com Domain, Plaintiff sent Defendant a cease-and-desist letter. EWC explained to Defendant's counsel that while it appreciates fair competition and it wanted to resolve the matter amicably, the re-routing and misleading of EWC's customers was an illegal and unacceptable business practice. EWC requested that Defendant immediately transfer the Waxxcenter.com Domain to Plaintiff's control, and refrain from such unlawful efforts in the future.

40.     In response to EWC's correspondence, the Defendant refused to provide a substantive response to Plaintiff's concerns and continued to defiantly redirect traffic from the Waxxcenter.com Domain to the Waxxpot.com Domain.

41.     EWC subsequently discovered that, in addition to this unlawful behavior, Defendant had adopted the infringing mark WAXX PAXX, detailed above.

42.     The Defendant's continued usage of EWC's intellectual property and further encroachment on Plaintiff's rights – after being placed on unequivocal notice of their unfair

competition and unlawful behavior – confirms the Defendant's willful infringement and bad faith intent to profit from EWC's goodwill.

43.    Upon information and belief, Defendant was aware of Plaintiff, Plaintiff's goodwill and trademarks and service mark at the time the Defendant purchased the Waxxcenter.com Domain and adopted Defendant's Mark. Accordingly, and upon information and belief, Defendant has been engaging in the above-described unlawful activities knowingly and intentionally and/or with reckless disregard for EWC's rights.

44.    Upon information and belief, Defendant will continue to advertise, promote and offer for sale waxing services under the infringing Defendant's Mark, and continue to unlawfully reroute the Waxxcenter.com Domain unless otherwise restrained by this Court.

45.    Unless Defendant's unlawful conduct is enjoined, this conduct will severely inhibit and/or destroy the ability of EWC's trademarks and goodwill to identify EWC as their exclusive source, resulting in irreparable harm to the Plaintiff.

<u>**COUNT 1**</u>
<u>**Defendant – Trademark Infringement**</u>
<u>**Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(a)**</u>

46.    Plaintiff hereby incorporates by reference all prior allegations set forth in paragraphs 1 – 45 herein.

47.    Plaintiff has used the WAX PASS Mark in U.S. commerce since as early as 2004 for out-of-home waxing services.

48.    Plaintiff owns an incontestable U.S. federal service mark registration for the WAX PASS Mark.

49.    Consumers in the out-of-home waxing service industry recognize Plaintiff's Mark and variations thereof of originating with Plaintiff and Plaintiff's proffered services.

50. Defendant began using in commerce reproductions, counterfeit copies, colorable imitations of, and/or confusingly similar copies of Plaintiff's Mark, namely, the WAXX PAXX Mark, in connection with the promotion, offer, and sale in commerce of out-of-home waxing services in direct competition with waxing services branded with Plaintiff's Mark offered by Plaintiff.

51. Defendant's use of the WAXX PAXX Mark began after Plaintiff's use, and registration of, Plaintiff's Mark.

52. Plaintiff did not authorize, nor consent to, Defendant's adoption and use of the WAXX PAXX Mark with waxing services.

53. Defendant's use of the WAXX PAXX Mark with waxing services is likely to cause consumer confusion, deception, and/or mistake by creating the false and misleading impression that Defendant's services are offered by EWC, are associated or connected with EWC, or have the sponsorship, endorsement, or approval of EWC.

54. Upon information and belief, at the time of committing the acts alleged herein, Defendant had actual or constructive knowledge of Plaintiff's ownership of Plaintiff's Mark, its federal registration thereof, and Plaintiff's prior use of the WAX PASS Mark for waxing services.

55. Defendant's knowing, willful, and intentional acts as alleged herein constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(a).

56. Plaintiff has been, and will continue to be damaged, as a result of the Defendant's intentional and/or willful acts of trademark infringement. Plaintiff is therefore entitled to an injunction pursuant to 15 U.S.C. § 1116(a) barring Defendant from further violation of 15 U.S.C. § 1114(a). Defendant is likely to continue to engage in such practices unless it is enjoined by this Court from further violations.

57. By reason of the foregoing, Defendant is also liable to EWC for Defendant's profits, enhanced damages, attorneys' fees, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

## COUNT 2
### Defendant - Unfair Competition
### Under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

58.     Plaintiff hereby incorporates by reference all prior allegations set forth in paragraphs 1-45 herein.

59.     Plaintiff has used the WAX PASS Mark, and the Waxcenter.com Domain in U.S. commerce since as early as 2004 for out-of-home waxing services.

60.     Plaintiff owns an incontestable U.S. federal service  mark registration for the WAX PASS Mark.

61.     Defendant's use of the WAXX PAXX Mark began after Plaintiff's use and registration of the WAX PASS Mark.

62.     Defendant's use of the Waxxcenter.com Domain and re-routing of customers began after Plaintiff's adoption and use of the Waxcenter.com Domain with waxing services.

63.     Plaintiffs did not authorize, nor consent to, Defendant's purchase of the Waxxcenter.com Domain or re-routing of customers.

64.     Consumers in the out-of-home waxing service industry recognize both the Plaintiff's Mark and variations thereof, and the Waxcenter.com Domain, as originating with Plaintiff and Plaintiff's proffered waxing services.

65.     Defendant and Plaintiff compete for a common pool of customers – both parties offer out-of-home waxing services and skin care products to consumers, including through franchisees.

66.     Upon information and belief, in approximately April, 2023,, Defendants began using in commerce reproductions, counterfeit copies, colorable imitations of, and/or confusingly similar copies of Plaintiff's Mark, namely, the WAXX PAXX Mark, in connection with the promotion, offer, and sale in commerce of out-of-home waxing services in direct competition with waxing services branded with Plaintiff's Mark and offered by Plaintiff.

67.     Defendant's use of the WAXX PAXX Mark is likely to cause consumer confusion, deception, and/or mistake by creating the false and misleading impression that Defendant's waxing services are offered by EWC, are associated or connected with EWC, or have the sponsorship, endorsement, or approval of EWC when they do not.

68.     Defendant's additional actions of re-routing of the Waxxcenter.com Domain to the Waxxpot.com Domain are an attempt to confuse and mislead consumers as to the origin, association, sponsorship, or endorsement of Defendant's waxing services and skin care products.

69.     Defendant's attempt to imitate EWC by re-routing accidentally mis-directed consumers and then using a highly similar WAXX PAXX service mark to confuse consumers is the equivalent of using a false sales pitch contrary to honest business practice.

70.     Upon information and belief, at the time of committing the acts alleged herein regarding the Defendant's Mark, Defendant had actual or constructive knowledge of Plaintiff's ownership and use of Plaintiff's Mark and Domain.

71.     By engaging in the aforesaid acts, Defendant is intentionally trading upon Plaintiff's goodwill and unfairly competing with Plaintiff.

72.     Defendant's actions demonstrate a clear, intentional, willful, and malicious intent to trade on the goodwill associated with EWC and its Mark and constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

73.     Plaintiff has been, and will continue to be damaged, as a result of Defendant's intentional and/or willful acts of unfair competition. Plaintiff is therefore entitled to an injunction barring Defendant from further acts of unfair competition in violation of 15 U.S.C. §1125(a)(1)(A), and ordering Defendant to transfer the Waxxcenter.com Domain to Plaintiff at no cost. Defendant is likely to continue to engage in such unfair competition practices unless it is enjoined by this Court from further violation.

74.     By reason of the foregoing, Defendant is also liable to EWC for Defendant's profits, enhanced damages, attorneys' fees, and the costs of this action.

**COUNT 3**
**Defendant – Trademark Infringement**
**Under Texas Common Law**

75.     Plaintiff hereby incorporates by reference all prior allegations set forth in paragraphs 1 – 45 herein.

76.     Plaintiff has used the WAX PASS Mark in commerce in the State of Texas since as early as 2009 for out-of-home waxing services.

77.     Plaintiff owns an incontestable U.S. federal service mark registration for the WAX PASS Mark for waxing service.

78.     Texas consumers in the out-of-home waxing service industry recognize Plaintiff's Mark and variations thereof as originating with Plaintiff and Plaintiff's proffered waxing services.

79.     Defendant began using in commerce reproductions, counterfeit copies, colorable imitations of, and/or confusingly similar copies of Plaintiff's Mark, namely, the WAXX PAXX Mark, in Texas in connection with the promotion, offer, and sale in commerce of out-of-home waxing services in Texas in direct competition with waxing services branded with Plaintiff's Mark and offered by Plaintiff in Texas.

80.     Defendant's use of the WAXX PAXX Mark with waxing services in Texas began after Plaintiff's ownership and use of Plaintiff's Mark with waxing services in Texas, and registration of Plaintiff's Mark with waxing services.

81.     Plaintiff did not authorize, nor consent to, Defendant's adoption and use of the WAXX PAXX Mark with waxing services in Texas.

82.     Defendant's use of the WAXX PAXX Mark with waxing services in Texas is likely to cause consumer confusion, deception, and/or mistake in Texas by creating the false and misleading impression that Defendant's waxing services are offered by EWC, are associated or connected with EWC, or have the sponsorship, endorsement, or approval of EWC when they do not.

83.     Defendant's continued use of the WAXX PAXX Mark with waxing services in Texas has caused, and is likely continuing to cause, substantial, irreparable injury to the public in Texas and to EWC.

84.     Defendant's actions therefore constitute trademark infringement in violation of Texas common law.

85.     Plaintiff has been, and will continue to be damaged, as a result of the Defendant's intentional and/or willful acts of trademark infringement. Plaintiff is therefore entitled to an injunction barring Defendant from further violation of Texas common law. Defendant is likely to continue to engage in such unfair competition practices unless it is enjoined by this Court from further violation.

86.     By reason of the foregoing, Defendant is also liable to EWC for Defendant's profits, enhanced damages, attorneys' fees, and the costs of this action.

<u>**COUNT 4**</u>
<u>**Defendant – Unfair Competition**</u>
<u>**Under Texas Common Law**</u>

87.     Plaintiff hereby incorporates by reference all prior allegations set forth in paragraphs 1-45 herein.

88.     Plaintiff has used the WAX PASS Mark, and the Waxcenter.com Domain in United States commerce since as early as 2004 for out-of-home waxing services.

89.     Plaintiff owns an incontestable U.S. federal service mark registration for the WAX PASS mark with waxing services.

90.     Defendant's use of the WAXX PAXX Mark with waxing services in Texas began after Plaintiff's use of the WAX PASS Mark with waxing services in Texas and registration of the WAX PASS Mark for waxing services.

91.     Defendant's use and rerouting of the Waxxcenter.com Domain to the Waxxpot Domain began after Plaintiff's adoption and use of the Waxcenter.com Domain in Texas with its waxing services.

92.     Plaintiff did not authorize, nor consent to, Defendant's purchase and re-routing of the Waxxcenter.com Domain.

93.     Texas consumers in the out-of-home waxing service industry recognize both the Plaintiff's Mark and variations thereof, and the Waxcenter.com Domain, as originating with Plaintiff and Plaintiff's proffered waxing services in Texas.

94.     Defendant and Plaintiff compete for a common pool of customers – both parties offer out-of-home waxing services and body care products to consumers in Texas, including through franchisees.

95.     Defendants began using in commerce reproductions, counterfeit copies, colorable imitations of, and/or confusingly similar copies of Plaintiff's Mark, namely, the WAXX PAXX Mark, in connection with the promotion, offer, and sale in commerce of out-of-home waxing services in Texas in direct competition with waxing services branded with Plaintiff's Mark and offered by Plaintiff in Texas.

96.     Defendant's use of the WAXX PAXX Mark with waxing services in Texas is likely to cause consumer confusion, deception, and/or mistake by creating the false and misleading impression that Defendant's waxing services in Texas are offered by EWC, are associated or connected with EWC, or have the sponsorship, endorsement, or approval of EWC when they do not.

97.     Defendant's additional actions of re-routing of the Waxxcenter.com Domain to the Waxxpot.com Domain are an attempt to confuse and mislead Texas consumers as to the origin, association, sponsorship, or endorsement of Defendant's waxing services.

98.     Defendant's attempt to imitate EWC by re-routing accidentally mis-directed consumers and then using a highly similar WAXX PAXX service mark to confuse Texas consumers is the equivalent of using a false sales pitch contrary to honest business practice.

99.     Upon information and belief, at the time of committing the acts alleged herein regarding the Defendant's Mark, Defendant had actual or constructive knowledge of Plaintiff's ownership  and use of Plaintiff's Mark with waxing services in Texas.

100.    By engaging in the aforesaid acts, Defendant is intentionally trading upon Plaintiff's goodwill in Texas and unfairly competing with Plaintiff in Texas.

101.    Defendant's actions demonstrate a clear, intentional, willful, and malicious intent to trade on the goodwill associated with EWC in Texas and constitute unfair competition in violation of Texas common law.

102.    Plaintiff has been, and will continue to be damaged, as a result of the Defendant's intentional and/or willful acts of unfair competition. Plaintiff is therefore entitled to an injunction barring Defendant from further acts of unfair competition in violation of Texas common law, and ordering Defendant to transfer the Waxxcenter.com Domain to Plaintiff at no cost. Defendant is likely to continue to engage in such unfair competition practices unless it is enjoined by this Court from further violation.

103.    By reason of the foregoing, Defendant is also liable to EWC for Defendant's profits, enhanced damages, attorneys' fees, and the costs of this action.

**COUNT 5**
**Defendant – Unjust Enrichment Under Texas Law**

104.    Plaintiff hereby incorporates by reference all prior allegations set forth in paragraphs 1 – 45 herein.

105.    The acts of the Defendants in Texas complained of above resulted in unjust enrichment of said Defendants at Plaintiff's expense.

106.    Plaintiff has been, and will continue to be, damaged by Defendants' acts of unjust enrichment in Texas. Plaintiff is therefore entitled to an injunction barring Defendant from further acts of unjust enrichment, and ordering Defendant to transfer the Waxxcenter.com Domain to Plaintiff at no cost. Defendant is likely to continue to engage in such unjust enrichment unless it is enjoined by this Court from further violation.

107.    By reason of the foregoing, Defendant is also liable to EWC for Defendant's profits, enhanced damages, attorneys' fees, and the costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, EWC respectfully requests that this Court enter judgment in its favor providing the following relief:

1.    That the Court order an injunction ordering that the Defendant, its officers, agents, servants, employees, and all other persons in privity or acting in concert with them, who receive a copy of this Order, be enjoined and restrained from:

a.    Misappropriating, applying for, registering, and/or using Plaintiff's Mark, the WAXX PAXX Mark, or any trademarks, service mark or names (including in combination of other words), that are likely to be confused with any trademarks or service marks used by the Plaintiff in connection with any goods or services identical to or related to Plaintiff's waxing services and body care products;

b. Owning, licensing, or using domains, either for direct usage or re-directing to Defendant's other owned, licensed, or utilized domains, which are likely to cause confusion, deception, or cause mistake, from consumers – including, but not limited to, the Waxxcenter.com Domain.

c. Use, display, disseminate, or distribute advertisements or promotional materials using Plaintiff's Mark, or the WAXX PAXX Mark, to promote Defendant's waxing services – including, but not limited to, their website(s), social media, print advertisements, or digital advertisements; and

d. Any other false or misleading statements or unfair business practices intended to be false, or misleading, and intended to cause confusion, deception, or mistake from consumers attempting to purchase or use Plaintiff's waxing services.

2.     Direct Defendant to destroy, take down, and remove any public display and distribution of all advertisements, communications, promotional materials, and Internet materials within Defendant's ownership and control related to this Order, the Waxxcenter.com Domain, or the WAXX PAXX Mark;

3.     That Defendant, within ten (10) days of judgment, transfer the Waxxcenter.com Domain to Plaintiff at no cost;

4.     That Defendant, within thirty (30) days of judgment, be required to file with this Court, and serve on Plaintiff, a written statement, under oath, setting forth in detail the manner and form in which it has complied with this injunction pursuant to 15 U.S.C. § 1116(a);

5.     Plaintiff is awarded all damages caused by the acts forming the basis of this Complaint, in an amount to be found by the jury at trial of this case;

6.      Due to Defendant's knowing and intentional use of a confusingly similar service mark to Plaintiff's Mark, and its engagement in unfair competition practices, the damages award be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a).

7.      Plaintiff recovers from Defendant the cost and disbursements of this action in addition to its reasonable attorneys' fees, pre-judgment interest, and post-judgment interest pursuant to 15 U.S.C. § 1117.

8.      Due to Defendant's knowing and deliberate infringement of Plaintiff's Mark, and its engagement in unfair competition practices, Plaintiff be awarded punitive damages in a sum sufficient to deter Defendant from engaging further in such sales practices;

9.      Plaintiff be awarded restitution for Defendant's unjust enrichment;

10.     That this Court retain jurisdiction of this action for the purpose of enabling EWC to apply to the Court at any time for such further orders and interpretation or enforcement of any Order entered in this action, for the modification of such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof; and

11.     EWC be granted pre and post judgment interest, to the extent applicable, as well as such other and further reliefs as the Court may deem just.

Respectfully submitted,


By: */s/ Tricia W. Macaluso*
     Tricia W. Macaluso
     Texas Bar No. 24013773
     tmacaluso@seyfarth.com
     SEYFARTH SHAW LLP
     2323 Ross Avenue, Suite 1660
     Dallas, TX  75201
     Telephone:  (469) 608-6706
     Facsimile:  (214) 853-4289

And

     Aaron Y. Silverstein
     (*pro hac* to be filed)
     asilverstein@sandsip.com
     Saunders & Silverstein LLP
     14 Cedar Street, Suite 224
     Amesbury, MA 01913
     Telephone:  (978) 463-9130

     *Attorneys for Plaintiff*